UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
KAREN JEMMOTT,

                 Plaintiff,                           **MEMORANDUM AND ORDER**

          v.                                19-CV-989 (RPK) (ST)

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION; KINGS COUNTY HOSPITAL
CENTER,

                 Defendants.
----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

       Plaintiff Karen Jemmott brings six discrimination claims against defendants New York

City Health and Hospitals Corporation and King County Hospitals Center.  Plaintiff and

defendants have each moved for summary judgment.  For the reasons that follow, summary

judgment is granted to defendants on plaintiff's claims for discrimination, hostile work

environment, and failure to accommodate.  Summary judgment is denied to both parties on

plaintiff's retaliation claim.

## BACKGROUND

       The facts in this section are taken from the parties' exhibits and their statements of fact

filed in accordance with Local Rule 56.1, unless otherwise noted.

       In December 2015, plaintiff began working as the senior associate director of community

outreach at Kings County Hospital Center ("KCHC").  Defs.' Local R. 56.1 Statement ¶ 1 (Dkt.

#37-2) ("Defs.' 56.1 Statement"); Jemmott Dep., Defs.' Ex. A 27:4–9 (Dkt. #37-3) ("Jemmott

Dep.").  She oversaw the hospital's outreach department, whose activities included conducting

health screenings in the community, working with elected officials, and organizing health-related

events.  Defs.' 56.1 Statement ¶ 2; Jemmott Dep. 27:15–25.

Plaintiff was supervised by Leticia Theodore-Greene from October 2016 until the termination of plaintiff's employment on February 14, 2017. Defs.' 56.1 Statement ¶¶ 5–6, 33; Jemmott Dep. 28:25–29:4; 29:17–25; 30:5. Plaintiff, in turn, supervised the assistant director of community outreach, Xiomara Wallace, until approximately January 2017. Defs.' 56.1 Statement ¶¶ 3, 31; Theodore-Greene Dep., Defs.'s Ex. B 55:17–56:6 (Dkt. #37-4) ("Theodore-Greene Dep."); Jemmott Dep. 28:17–20. On November 17, 2016, plaintiff sent an e-mail complaining about Theodore-Greene's conduct to Theodore-Greene and several higher-level employees. The email was addressed to Theodore-Greene, the acting president of the Health and Hospitals Corporation ("H&H"), the head of H&H's legal department, the Director of Human Resources for KCHC, and the CEO of KCHC. Defs.' 56.1 Statement ¶ 8; Nov. 22, 2016 Email 5–6 (Dkt. #37-6) ("11/22/2016 Email"); Jemmott Dep. 49:13–20; 50:10–14. Plaintiff alleged that Theodore-Greene harassed her and bullied her. She also alleged that Theodore-Greene created a hostile work environment by sending her "several consistent targeted harassing, condescending, and bullying emails"; "giv[ing her] demeaning assignments," such as collecting donation boxes around the hospital; and "instruct[ing her] to find someone to work . . . on [her] day off." Nov. 22, 2016 Email 5–6. She also accused Theodore-Greene of "undermin[ing] [her] authority" with Wallace, including by having her own meetings with Wallace and giving Wallace directions, and "allow[ing] Wallace to call [her] a liar in a meeting." Defs.' 56.1 Statement ¶ 8; 11/22/2016 Email 5–6; Jemmott Dep. 49:13–20; 50:10–14. And she alleged that Theodore-Greene had accused plaintiff of failing to attend meetings that she was not scheduled to attend. Defs.' 56.1 Statement ¶¶ 8–10; 11/22/2016 Email 5–6; Jemmott Dep. 49:25–50:1; 51:5–19; 52:15–22; 53:17–24. Plaintiff also stated that Theodore-Greene had asked her to work on a Saturday even though she was scheduled to attend her cousin's wedding that day. Defs.' 56.1 Statement ¶ 14; 11/22/2016

Email 5.  In the e-mail, plaintiff stated that the alleged harassment "has taken a toll on [her] health and well being"; caused her to "have had sleepless nights [and] consistent headaches/migraines"; and forced her "to seek mental health counseling and . . . to see [her] doctor due to heart palpitations."  11/22/2016 Email 5.

Plaintiff did not suggest in her e-mail that she thought her religion was a factor motivating Theodore-Greene's conduct.  *Id.* at 5–6; *see* Compl. ¶ 41 (Dkt. #1).  Indeed, she later stated in her deposition that she thought Theodore-Greene's conduct "was an HR issue," not "an EEO issue." Defs.' 56.1 Statement ¶ 13; Jemmott Dep. 56:9–22.

On December 16, 2016, Theodore-Greene amended plaintiff's job description to state that she was required to work evenings and weekends.  Defs.' 56.1 Statement ¶ 17; Jemmott Dep. 59:12–18.  Plaintiff—who had not previously mentioned her religion to Theodore-Greene or anyone else at KCHC—told Theodore-Greene that she could not work Saturdays because she was a non-denominational Sabbath observer.  Defs.' 56.1 Statement ¶¶ 18–19; Jemmott Dep. 60:7–13.  Theodore-Greene responded by saying "okay."  Jemmott Dep. 60:14–25.

A few days later Theodore-Greene asked plaintiff to submit a written religious accommodation request.  Jemmott Dep. 60:5–61:23.  Plaintiff did so on December 27, 2016. Defs.' 56.1 Statement ¶ 20.  At the time the request was made, an H&H policy provided that no "more than three weeks after the employee submits a religious accommodation request . . . the Senior Manager shall inform the employee in writing whether the network/facility will grant the requested accommodation."  Operating Policy & Procedure 5 (Dkt. #37-9).

Plaintiff's request was approved sometime in January, after plaintiff sent Theodore-Greene "three or four follow up e-mails," Defs.' 56.1 Statement ¶ 20–21; Jemmott Dep. 63:5–24; Religious Accommodation Request (Dkt. #37-7), although the parties disagree over whether

January 18 or January 27 was the approval date.  See Defs.' 56.1 Statement ¶ 21 (January 27);

Jemmott Dep. 65:3–16 (January 18).; Jan. 30, 2017 Email 2 (Dkt. #37-8) ("1/30/2017 Email")

(January 18).  Plaintiff was not required to work weekends while her request was pending or after

it was granted.  Defs.' 56.1 Statement ¶ 22.

Plaintiff alleges that after she submitted her religious accommodation request, Theodore-

Greene "singl[ed her] out" by sending her at least "twenty accusatory emails."  Jemmott Dep.

66:25–67:6; 70:5–25.  For example, plaintiff states that on one occasion Theodore-Greene accused

her of inconveniencing the IT team by failing to coordinate a time to set up equipment, even though

another person was responsible for making those arrangements.  Jemmott Dep. 67:18–68:9.

On February 8, 2017, plaintiff called KCHC's director of human resources to complain

about Theodore-Greene's conduct.  Jemmott Dep. 72:6–12.  According to plaintiff, the director of

human resources told her "to decide if [she] wanted to work in a hostile environment, because

nothing was going to change."  *Id*. at 72:8–12.

That same day, plaintiff alleges, plaintiff was out sick.  Plaintiff alleges that she had told

the human resources department that she was out sick, and that she believed the human resources

department had forwarded that information to Theodore-Greene, but that plaintiff forgot to press

"send" on an email telling Theodore-Greene that she would not be coming into work.  Pl.'s Local

R. 56.1 Statement ¶ 7 (Dkt. #38-1); Jemmott Dep. 80:18–82:7; Defs.' 56.1 Statement ¶ 26.

Theodore-Greene accused plaintiff of being "AWOL," and plaintiff testified it was possible she

was docked a day's pay.  Defs.' 56.1 Statement ¶ 26; Jemmott Dep. 81:4–18; 82:9–11; 84:1–6.

On February 10, 2017, plaintiff visited KCHC's Equal Employment Opportunity ("EEO")

office "to file a complaint."  Defs.' 56.1 Statement ¶ 26; Jemmott Dep. 76:19–77:6.  However, the

officer she spoke to "was bogged down with too many other complaints" and told plaintiff to file

4

her complaint with the Equal Employment Opportunity Commission ("EEOC").  Jemmott Dep. 77:12–25.  Plaintiff did not file a formal complaint.  Defs.' 56.1 Statement ¶ 27.

Plaintiff was fired on February 14, 2017.  *Id*. at ¶ 33.  According to Theodore-Greene, plaintiff's employment was terminated due to insubordination and interpersonal conflicts. Theodore-Greene Dep. 135:14–22.  Theodore-Greene stated that plaintiff was "very talented, but very difficult to work with" because "her interpersonal skills were lacking." *Id.* at 86:3–7.  She stated that plaintiff "was often impolite," "[o]ften did not listen," and was "[o]ften combative." *Id.* at 155:3–4.  She added that "there were complaints about her interpersonal skills from other people within the office, including, her direct report." *Id*. at 155:4–7.  And she stated that plaintiff had made missteps, including "[i]nviting elected officials to events without permission," "stepping aside or beyond what she should have been doing," and "[n]ot following protocol." *Id*. at 133:21– 134:2.

Plaintiff, for her part, alleges that the director of human resources told her she was fired because she wasn't "getting along with [Theodore-Greene]" and "went to EEO."  Jemmott Dep. 85:8–12; Feb. 15, 2017 Email 1 (Dkt. #38–7) ("2/15/2017 Email").

Several months after she was fired, plaintiff filed a charge of religion-based discrimination with the EEOC, which later provided plaintiff with a right-to-sue letter.  Compl. ¶¶ 20–21.

Plaintiff then filed this lawsuit.  *Id*. at 1.  She alleges that defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., by discriminating against her on the basis of religion, by creating a hostile work environment, by retaliating against her for engaging in protected activity, and by failing to provide reasonable religious accommodations. Compl. ¶¶ 71–106.  She also alleges that defendants violated the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law

("NYCHRL"),  N.Y.C. Admin. Code § 8-101 *et seq*., by discriminating against her on the basis of religion.  Compl. ¶¶ 56–70.

All parties have moved for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law."  *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).  In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant.  *See ibid*.  A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers."  Fed. R. Civ. P. 56(c)(1)(A).  I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).  "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted).

## DISCUSSION

Summary judgment is granted to defendants on plaintiff's claims based on religious discrimination, a hostile work environment, and failure to accommodate. Summary judgment is denied to both parties on plaintiff's retaliation claim.

## I. Plaintiff Cannot Establish a Title VII Discrimination Claim

Because no reasonable jury could find that defendants terminated plaintiff's employment on the basis of her religion, defendants are entitled to summary judgment on plaintiff's Title VII discrimination claim.

Courts evaluate Title VII claims under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Doe v. Columbia Univ.*, 831 F.3d 46, 59 (2d Cir. 2016) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 143 (2d Cir. 2008)); *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252 (1981). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). "In the context of an alleged discriminatory discharge, a plaintiff must show that (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Id*. at 491–92. Next, the burden shifts to the defendant "to offer a legitimate nondiscriminatory reason for the termination." *Id*. at 492. If the defendant succeeds, the burden shifts back to the plaintiff. At this phase, the plaintiff "may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of . . . discrimination." *Holcomb*, 521 F.3d at 138. The burden of persuasion remains on the plaintiff throughout. *Burdine*, 450 U.S. at 253.

A.      **Plaintiff fails to establish a *prima facie* case.**

Plaintiff has failed to establish a *prima facie* case of religious discrimination, because no reasonable jury could find that plaintiff's termination occurred under circumstances giving rise to an inference of discriminatory intent.   Plaintiff seeks to establish this inference not by pointing to events or statements surrounding the termination itself but by pointing to asserted differences in the manner in which she was treated after first advising Theodore-Greene of her religion.   These attempts fail.

Plaintiff first suggests that she has established a *prima facie* case that her termination was a product of religious discrimination because "she was treated differently before her reasonable accommodations request than she was after making it."  Mem. in Opp'n 19 (Dkt. #38).  But the record does not support that assertion.   Plaintiff complained of Theodore-Greene's allegedly harassing conduct toward her one month before plaintiff made a religious accommodation request or otherwise made Theodore-Greene aware of her religion.   Defs.' 56.1 Statement ¶¶ 8, 17–19. Specifically, plaintiff alleged in an email on November 17, 2016, that Theodore-Greene was harassing her, bullying her, and creating a hostile work environment by, *inter alia*, sending her "several consistent targeted harassing, condescending, and bullying emails"; "undermin[ing] [her] authority" with Wallace; "allow[ing] Wallace to call [her] a liar"; "giv[ing her] demeaning assignments"; and "instruct[ing her] to find someone to work . . . on [her] day off."  Defs.' 56.1 Statement ¶ 8; 11/22/2016 Email 5–6; Jemmott Dep. 49:13–20; 50:10–14.  There is no evidence that Theodore-Greene or defendants had any information about plaintiff's religious beliefs during that period; accordingly, as plaintiff acknowledges, "[a]t that time, Ms. Theodore-Greene posed no threat to violating any protected category."  Compl. ¶ 41; *see Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005) ("[A] defendant's discriminatory intent cannot be inferred, even at the *prima facie* stage, from circumstances unknown to the defendant.").   Indeed, plaintiff

8

confirmed in her deposition that she thought Theodore-Greene's conduct during this period "was an HR issue," not "an EEO issue."  Defs.' 56.1 Statement ¶ 13; Jemmott Dep. 56:9–22.

Plaintiff has not presented evidence from which a reasonable jury could infer religious discrimination on the theory that Theodore-Greene treated plaintiff differently after plaintiff informed her of her religion on December 16, 2016.  Defs.' 56.1 Statement ¶¶ 23–24, 28; Jemmott Dep. 60:7–13.  To the contrary, plaintiff's evidence shows that Theodore-Greene treated plaintiff in the same manner as before.  For example, plaintiff stated in an email to HR on January 30, 2016, that "[s]ince Ms. Greene agreed . . . to honor my religious accommodation request[,] . . . I *continue* to feel targeted bullied and humiliated by her."  1/30/2017 Email 2 (emphasis added).  And although plaintiff testified at one point that Theodore-Greene sent her a greater volume of "accusatory e-mails" after submitting her religious accommodation request, she then clarified that the increase occurred after she "came back from being out sick" on "December 6 or 7"—more than a week before Theodore-Greene learned about plaintiff's religion.  Jemmott Dep. 70:5–72:5.  Accordingly, no reasonable jury could find that plaintiff "was treated differently before her reasonable accommodations request than she was after making it," Mem. in Opp'n 19, and plaintiff cannot establish an inference of discriminatory intent on this basis.

Plaintiff alternatively suggests that defendants' conduct in terminating her employment based on insubordination and interpersonal issues is evidence of religious discrimination, because defendants did not take disciplinary action against Xiomara Wallace—whom plaintiff alleges was also insubordinate.  *Ibid*.  In particular, plaintiff argues, defendants "treated her differently than other similarly situated employees, such as Xiomara Wallace," because while plaintiff was ultimately fired, Wallace was not disciplined for insubordination after Wallace called plaintiff a liar.  *Ibid*.  This argument fails.  "A plaintiff relying on disparate treatment evidence 'must show

she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (citation omitted). Plaintiff has fallen far short of doing that.  First, plaintiff and Wallace were not similarly situated because plaintiff was a supervisor—Wallace's supervisor in particular.  "Courts in this district have often recognized supervisors and non-managerial employees to be *differently* situated for purposes of assessing discriminatory intent." *Smalls v. Amazon.com Servs. LLC*, No. 20-CV-5492 (RPK) (RLM), 2022 WL 356432, at *6 (E.D.N.Y. Feb. 7, 2022); *Prescod v. Am. Broad. Cos.*, No. 77-CV-6125 (JFK), 1985 WL 430, at *14 (S.D.N.Y. Mar. 19, 1985) ("Supervisors are not 'similarly situated employees.'").  Second, plaintiff has not put forward facts from which a reasonable jury could infer that plaintiff and Wallace were treated differently for similar conduct. *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (requiring plaintiff to "show that her co-employees were subject to the same performance evaluation and discipline standards" and "engaged in comparable conduct").  In describing the insubordination and interpersonal issues that allegedly led to plaintiff's firing, Theodore-Greene described a consistent pattern of problematic conduct: "*often* impolite," "[*o*]*ften* did not listen," [*o*]*ften* combative."  Theodore-Greene Dep. 155:3–4.  Plaintiff, in contrast, has alleged only that Wallace called plaintiff a liar on a single occasion.  That is, plaintiff has not offered evidence from which a jury could infer that defendants failed to discipline Wallace for conduct comparable to that which resulted in plaintiff's firing. Finally, plaintiff makes no allegations regarding Wallace's religious beliefs or practices, which may or may not have differed from plaintiff's.  Given these shortcomings, plaintiff has not alleged facts from which a jury could infer that plaintiff was treated differently because of her religious faith.

Accordingly, plaintiff has failed to establish a *prima facie* case of religious discrimination, and defendants are entitled to summary judgment on this claim.

### B.   Even if plaintiff could establish a *prima facie* case, she cannot establish that defendants lacked a legitimate, non-pretextual reason for firing her.

Even if plaintiff had made a *prima facie* case of religious discrimination, her claim would fail at the final step of the *McDonnell-Douglas* analysis.  Defendants articulated "legitimate, non-discriminatory reason[s]," *Holcomb*, 521 F.3d at 138 (citation omitted), for terminating plaintiff's employment: insubordination and interpersonal issues.  Defs.' 56.1 Statement ¶ 33; *see id.* ¶ 30; Theodore-Greene Dep. 86:3–7; 89:9–15.  Defendants have therefore met their burden at the second stage of the *McDonnell-Douglas* framework.  *See, e.g.*, *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir. 1990) ("[T]he district court correctly found that [defendant's] burden of producing a legitimate, non-discriminatory explanation for the discharge was satisfied by its contention that [plaintiff's] interpersonal difficulties necessitated his discharge."), *abrogated on other grounds*, *Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000); *Vandel v. Standard Motor Prods., Inc.*, No. 99-7757, 1999 WL 1295332, at *1 (2d Cir. 1999) (holding that "interpersonal difficulties" are legitimate, non-discriminatory reasons for termination); *Boston v. Macfadden Pub., Inc.*, No. 09-CV-457 (RJH), 2010 WL 3785541, at *9 (S.D.N.Y. Sep. 29, 2010) (holding that "insubordination" and issues with "interpersonal communications" are legitimate, non-discriminatory reasons for termination).

No reasonable jury could accept plaintiff's arguments that those reasons were in fact pretexts for religious discrimination.  Plaintiff first argues a factfinder could infer that defendants' proffered reasons were pretexts because she had received positive performance evaluations.  Mem. in Opp'n 5.  But as an initial matter, this claim is not supported by admissible evidence.  The evaluations are not part of the summary judgment record.  Instead, to support her claim that she

11

received positive evaluations, plaintiff cites only a portion of a deposition transcript in which a questioner appears to be reading off a series of ratings of "fully competent" or "exceeds expectations" from an unknown document—with no answer reflected in the summary judgment record. *Ibid.*; *see* Jemmott Dep. 31:14–25. Because "it is black letter law that questions asked by counsel are not evidence," *Washington v. Schriver*, 255 F.3d 45, 61 (2d Cir. 2001), this submission falls short of establishing the content of plaintiff's performance evaluations. Even were it assumed that the performance evaluations from an unknown date contained numerous ratings of "fully competent" or "exceeds expectations," Mem. in Opp'n 5; *see* Decl. of Roger V. Archibald, Ex. G (Dkt. #38-9), plaintiff has not put forward evidence from which a jury could find those statements contradicted the reasons proffered for plaintiff's dismissal. Defendants themselves have acknowledged that plaintiff was "very talented," Theodore-Greene Dep. 86:3–8; 155:3–11, and "good at her job" despite her alleged insubordination and lack of interpersonal skills. Defs.' 56.1 Statement ¶ 30. And the record contains no evidence about the areas in which plaintiff was rated as "fully competent" or "exceed[ing] expectations"—much less any suggestion that those ratings encompassed interpersonal skills or belied an allegation of insubordination. Under these circumstances, a reasonable factfinder could not infer that the alleged evaluations assigning plaintiff ratings of "fully competent" and "exceeds expectations" in unknown categories were evidence that defendant's stated reasons for terminating plaintiff's employment were pretextual.

Nor could a reasonable factfinder determine that defendants' non-discriminatory explanations were pretextual on the theory that defendants "applied discipline for 'insubordination' inconsistently to similarly situated employees." Mem. in Opp'n 5. As discussed above, plaintiff fails to establish that any similarly situated employee was treated differently than plaintiff based on similar conduct. *See* pp. 9–10, *supra*.

Finally, no reasonable factfinder could infer that the proffered reasons for plaintiff's termination were pretexts based on plaintiff's submission that defendants "cannot even agree on who ordered [her] termination." Mem. in Opp'n 9. Plaintiff notes that Theodore-Greene and KCHC's president both stated that Theodore-Greene made the decision to end plaintiff's employment (in consultation with the Human Resources department), but the director of human resources stated that KCHC's president made the decision. *Id.* at 8; Theodore-Greene Dep. 156:20–23; Constantine Dep., Pl.'s Ex. C 80:2–19 (Dkt. #38-5); Baptiste Dep., Pl.'s Ex. D 32:8–22 (Dkt. #38-6). That minor discrepancy in defendants' account of who the ultimate decisionmaker was has little or no relevance to the disputed question in this case of *why* plaintiffs' employment was terminated.

In sum, plaintiff has not present evidence from which a reasonable factfinder could conclude that defendants lacked a legitimate, non-discriminatory reason for terminating plaintiff's employment.[1] Defendants are therefore granted summary judgment on plaintiff's Title VII religious discrimination claim.

---

[1] Plaintiff fails to establish that she suffered an adverse employment action apart from her termination. "The Second Circuit has made clear that an '[a]n adverse employment action is a materially adverse change in the terms and conditions of employment,'" and "[s]uch action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 211 (E.D.N.Y. 2014) (citations omitted). Plaintiff asserts that defendants assigned her clerical tasks, such as posting flyers and ordering supplies for Wallace, Mem. in Opp'n 13–15; Jemmott Dep. 72:13–75:25, but "'[t]he receipt of undesirable assignments must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action.' A Plaintiff's subjective 'dissatisfaction with the work assigned,' absent some evidence that the assignment materially worsened Plaintiff's working conditions, 'is insufficient to make out an adverse employment action.'" *Smith v. City of New York*, 385 F. Supp. 3d 323, 335–36 (S.D.N.Y. 2019) (citations omitted). Plaintiff identifies no such material detriment to her working conditions. Plaintiff also asserts that defendants "wrongly docked her a day's pay," Mem. in Opp'n 19, but the only evidence plaintiff cites—her deposition testimony—indicates that she does not know whether she was paid for that day, Jemmott Dep. 84:1–6. Even assuming that plaintiff was not paid, plaintiff concedes that she failed to properly notify Theodore-Greene that she would be out sick. Pl.'s L. Rule 56.1 Statement ¶ 7. Therefore, plaintiff cannot show that defendants' reason for allegedly docking her pay was a pretext for religious discrimination.

## II.  Plaintiff Cannot Establish a Title VII Hostile-Work-Environment Claim

Defendants are also entitled to summary judgment on plaintiff's claim of a hostile work environment in violation of Title VII.  Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  The Supreme Court has held that "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted).  "In order to survive a summary judgment motion with respect to a claim of a hostile work environment, . . . [t]he hostility or harassment must be on account of [plaintiff's] religion." *Leifer v. New York State Div. of Parole*, 391 F. App'x 32, 36 (2d Cir. 2010); *see Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("It is . . . important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.").

Plaintiff's hostile-work-environment claim fails because, as discussed above, no reasonable jury could find that the workplace treatment of which she complains was motivated by plaintiff's religion.  As explained above, plaintiff began complaining of the conduct that she alleges constituted a hostile work environment—such as Theodore-Greene's sending her "targeted harassing, condescending, and bullying emails," "undermin[ing] [her] authority" with Wallace, and "giv[ing] her] demeaning assignments"—before she had informed defendants of her religion or made an accommodation request.  Defs.' 56.1 Statement ¶ 8; 11/22/2016 Email 5–6; Jemmott Dep. 49:13–20; 50:10–14.  No reasonable factfinder could infer from plaintiff's account of a hostile environment that began before any accommodation request—and simply continued

afterward—that defendants subjected plaintiff to a hostile work environment because of her religion.  Accordingly, summary judgment is granted to defendants on plaintiff's hostile-work-environment claim.

Plaintiff's claim of a hostile work environment also fails because no reasonable factfinder could conclude that the conduct plaintiff describes amounts to a hostile work environment.  In order to succeed on a hostile-work-environment claim, "[t]he plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."  *Alfano*, 294 F.3d at 373.  Conduct "must be extreme to amount to a change in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Here, Plaintiff's principal complaints are that Theodore-Greene sent her "accusatory" emails, undermined her relationship with Wallace, and assigned her "demeaning" tasks, such as collecting donation boxes.  Mem. in Opp'n 13–15; *see* Defs.' 56.1 Statement ¶ 8; 11/22/2016 Email 5–6; Jemmott Dep. 49:13–20; 50:10–14.  No reasonable jury could find this conduct to constitute severe or pervasive harassment.  *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) ("[Plaintiff] alleges that defendants wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her.  These incidents do not support a finding of a hostile work environment that is pervasive or severe."); *Bowen-Hooks*, 13 F. Supp. 3d at 236–37 (holding that plaintiff did not experience sufficiently severe or pervasive harassment by, among other things, "being subject to a barrage of disciplinary actions and excessive scrutiny," having her "authority as a Lieutenant" undermined, and being assigned "undesirable and demeaning" work).

### III. There Are Triable Issues of Fact Regarding Plaintiff's Title VII Retaliation Claim

Summary judgment is denied to both parties on plaintiff's Title VII retaliation claim.

Title VII prohibits an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "Title VII retaliation claims are analyzed under the . . . *McDonnell Douglas* framework." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019). To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that "(1) [s]he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (citation omitted). "If a plaintiff sustains the initial burden, a presumption of retaliation arises," and the employer must "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). "[O]nce an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Ibid*. Neither party is entitled to summary judgment under this framework, because plaintiff has met her burden of establishing a *prima facie* case of retaliation; defendants have met their burden of articulating a non-discriminatory reason for plaintiff's termination; and a reasonable fact-finder could find for either party on the question of whether retaliation was a substantial reason for plaintiff's termination.

While defendants contest whether plaintiff has put forward sufficient evidence of a causal connection between protected activity and her termination, Mem. 14–15 (Dkt. #37), defendants are mistaken. Causation may be shown "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Gordon v. New York City Bd. of Educ.*, 232 F.3d

16

111, 117 (2d Cir. 2000); *see Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). Plaintiff has made that showing here, because the record reflects that plaintiff engaged in protected activity by visiting the EEO Office on February 10, and that she was then fired on February 14. Defs.' 56.1 Statement ¶¶ 27, 33.  Such a close temporal proximity, absent evidence of progressive formal discipline, is sufficient to establish a *prima facie* showing of causation.[2]  *See, e.g.*, *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 54 (2d Cir. 2017) (one month sufficient); *White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 390 (S.D.N.Y. 2011) (same); *Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 319 (E.D.N.Y. 2014) (same).

At the second *McDonnell-Douglas* stage, defendants have put forward a legitimate non-discriminatory rationale for plaintiff's firing.  As discussed above, defendants assert that plaintiff was terminated for insubordination and interpersonal issues—both legitimate, non-discriminatory reasons for the decision.  *See* pp. 11–12, *supra*; *see, e.g.*, *Hollander*, 895 F.2d at 83; *Vandel*, 1999 WL 1295332, at *1; *Macfadden Pub.*, 2010 WL 3785541, at *9.

Finally, at the third stage of the *McDonnell Douglas* framework, there is a triable issue as to whether retaliation was a substantial reason for plaintiff's termination.  Plaintiff has put forward evidence from which a reasonable jury could find in her favor through her testimony that KCHC's director of human resources told her on the day she was fired that she was being terminated in part because she "went to EEO."  2/15/2017 Email 1; *accord* Jemmott Dep. 85:8–12.  While defendants

---

[2] Plaintiff argues that she also engaged in protected activity by notifying EEO in November 2016 that the hospital had not properly posted the application for the position that Theodore-Greene later filled. Mem. in Opp'n 11; *see* Compl. ¶¶ 36–39; Jemmott Dep. 46:15–49:7.  However, this complaint does not constitute protected activity under Title VII because plaintiff did not assert that she was discriminated against as a result of the allegedly inadequate job posting. *See Ottley-Cousin v. MMC Holdings, Inc.*, No. 16-CV-00577 (MKB), 2019 WL 1994488, at *13 (E.D.N.Y. May 6, 2019) ("A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected characteristic and (2) that belief is reasonable.") (citation omitted); *see also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).  Moreover, plaintiff identifies no evidence establishing that Theodore-Greene knew that she filed this EEO complaint, *see* Mem. in Opp'n 11–12, so no reasonable jury could find that Theodore-Greene retaliated against plaintiff for doing so.

argue that "[t]his is a vague, stray remark, which is insufficient to raise an inference of retaliation," Reply 16 (Dkt. #39), the remark cannot be so easily set aside.  To decide "whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider the following factors: (1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process." *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004).  Here, the alleged remark was made by the director of human resources, not a low-level employee; it was made on the very day that plaintiff was fired; the content of the remark was such that a reasonable juror could view it as reflecting retaliation; and the content of the remark related to the decisionmaking process concerning plaintiff's firing.  There is no question that this statement rises above the level of a "stray remark."  *See Rizzo v. Amerada Hess Corp.*, No. 99-CV-0168, 2000 WL 1887533, at *5 (N.D.N.Y. Dec. 29, 2000) ("An employer's discriminatory statements will rise above the level of stray remarks and constitute direct evidence of discrimination when the statements are: (1) made by the decision maker or one whose recommendation is sought by the decision maker; (2) related to the specific employment decision challenged; and (3) made close in time to the decision.").

Under these circumstances, it is the jury's role to evaluate whether the statement occurred and, if so, what weight to attribute to it.  Accordingly, summary judgment is denied to both parties on plaintiff's Title VII retaliation claim.

## IV. Plaintiff Cannot Establish a Title VII Failure-To-Accommodate Claim

Defendants are entitled to summary judgment on plaintiff's claim that defendants failed to accommodate her religious practices.  Under Title VII, it is "an unlawful employment practice . . .

for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see* 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j).  To prevail on a Title VII failure-to-accommodate claim, a plaintiff must first establish a *prima facie* case of religious discrimination by showing "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) (citation omitted); *see Bowles v. N.Y. City Transit Auth.*, 285 F. App'x 812, 813 (2d Cir. 2008); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 315 (E.D.N.Y. 2014).  "Once a prima facie case is established by the employee, the employer 'must offer [him or her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (citation omitted).

Defendants are entitled to summary judgment on plaintiff's accommodation claim because there is no genuine dispute that defendants provided plaintiff with a reasonable religious accommodation.  Once plaintiff indicated that she observed the Sabbath on Saturdays, "[p]laintiff was never required to work on a weekend while her request [to have Saturdays off] was pending, or after her accommodation was granted."  Defs.' 56.1 Statement ¶ 22.  This scheduling change reflects a reasonable accommodation because it "eliminate[s] the conflict between the employment requirement, working on Saturdays, and the employee's religious practice of not working on the Saturday Sabbath." *Cosme v. Henderson*, 287 F.3d 152, 159 (2d Cir. 2002); *see St. Juste*, 8 F. Supp. 3d at 318 (collecting cases).  Insofar as plaintiff claims that defendants failed to accommodate her by delaying the formal approval of her December 16 accommodation request

19

until sometime in January, Mem. in Opp'n 22–23, that claim lacks merit.  Because plaintiff was not required to work any weekend while her request was pending, plaintiff can hardly claim that defendants failed to accommodate her religion during that time.

Accordingly, defendants are granted summary judgment on plaintiff's failure-to-accommodate claim.

## V.  Plaintiff Cannot Establish a NYCHRL Discrimination Claim

Plaintiff's claim of religious discrimination in violation of the NYCHRL fails because of the same deficiencies that doomed her Title VII claim of religious discrimination.

To state a NYCHRL discrimination claim, a litigant must show that she "'has been treated less well than other employees because of her [protected characteristic]'—*i.e.*, that she has been subjected to differential treatment." *Dillon v. Ned Mgmt., Inc*., 85 F. Supp. 3d 639, 657 (E.D.N.Y. 2015) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).  A defendant is entitled to summary judgment on a NYCHRL claim "where a plaintiff does not adduce sufficient evidence of a link between her termination and a discriminatory motive" or "where she fails to rebut convincing evidence that her employer treated her differently for legitimate business reasons, rather than her membership in a protected group." *Kerman-Mastour v. Fin. Ind. Reg. Auth., Inc.*, 814 F. Supp. 2d 355, 367 (S.D.N.Y. 2011).

Here, plaintiff's NYCHRL claim fails because plaintiff fails to establish that she was treated differently than other employees because of her religion.  *See* pp. 9–10, *supra.* While plaintiff seeks to support her NYCHRL claim by asserting that "she was treated differently than her subordinate for allegedly insubordinate behavior," Mem. in Opp'n 20, she has failed to show that she and her subordinate were similarly situated; failed to show that they were treated differently for comparable conduct; and has not alleged that the subordinate had a different religious faith or set of religious practices.  *See* p. 10, *supra.*  Moreover, as explained above,

plaintiff has failed to rebut defendants' evidence that defendants terminated plaintiff's employment for legitimate, non-discriminatory reasons. *See* pp. 11–13, *supra*. Accordingly, defendants are entitled to summary judgment on plaintiff's NYCHRL discrimination claim.

## VI. Plaintiff Cannot Establish a NYSHRL Discrimination Claim

Finally, defendants are entitled to summary judgment on plaintiff's claim of religious discrimination in violation of the NYSHRL. The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice . . . for an employer . . . because of an individual's . . . sex . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). It further provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article." *Id.* § 296(6). This Court "typically treat[s] Title VII and [NYSHRL] discrimination claims as analytically identical, applying the same standards of proof to both claims."[3] *Salomon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir.2008). Accordingly, because plaintiff's claims of religious discrimination under Title VII fail, defendants are also entitled to summary judgment on plaintiff's NYSHRL discrimination claim.

## CONCLUSION

Defendants' motion for summary judgment is granted as to plaintiff's claims for discrimination, hostile work environment, and failure to accommodate in violation of Title VII,

---

[3] "The New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard under the NYCHRL. . . . Significantly, however, these amendments only apply to claims that accrue on or after the effective date of October 11, 2019." *Wellner v. Montefiore Med. Cntr.*, 17-CV-3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019). Because plaintiff's claims arise from incidents that occurred in 2016 and 2017, the amendments do not apply to plaintiff's claims.

and plaintiff's claims of religious discrimination in violation of the NYCHRL and NYSHRL.  Both

parties' motions for summary judgment are denied as to plaintiff's Title VII retaliation claim.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 26, 2022
       Brooklyn, New York